# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF PENNSYLVANIA

|  |  |
|---|---|
| TROY D. STEVENS, <br>     Plaintiff, <br><br> v. <br><br> DALE A. MEISEL, Warden, et al., <br>     Defendants. | CIVIL ACTION <br><br> No. 09-cv-04445 |

**Memorandum**

YOHN, J.                                                                                                                                                                              May 10, 2010

      Plaintiff, Troy D. Stevens, brings this *pro se* civil rights action under 42 U.S.C. § 1983 against the warden of Lehigh County Prison, Dale A. Meisel, and three nurses on the prison medical staff, Jennifer Nichol, Melissa Fritz, and "Judy (Jane Doe)" (whom defendants identify as Judy Cihylik). Stevens claims that when he was an inmate of the prison in June 2009 the nurses violated his Eighth Amendment rights by failing to diagnose and treat properly an infection on his leg from methicillin-resistant staphylococcus aureus ("MRSA"). In addition, Stevens claims that Meisel failed to devise or ensure the application of appropriate policies and procedures for protecting Stevens's Eighth Amendment rights. Defendants have filed motions pursuant to Fed. R. Civ. P. 12(b)(6) to dismiss the complaint. They argue that, even accepting Stevens's allegations as true, he has not alleged a constitutional violation because he is only challenging the quality of the medical care he received, not the complete denial of medical treatment. I agree with defendants. I will therefore grant their motions and will dismiss the complaint with prejudice.

I.   **Factual Background**

The allegations of the complaint, which I assume to be true for the purposes of these 12(b)(6) motions, are summarized as follows.[1]

On June 7, 2009, while incarcerated at Lehigh County Prison, Stevens observed a small lesion-like bump on his leg and, believing he might have MRSA, requested medical treatment. (Complaint 11, 15.)  Stevens was "visually" examined by Fritz, who told him he "did not have MRSA" but that he should "wash and keep clean" the affected area.  (Id. at 8, 11.)  Stevens continued to believe that he might have MRSA and requested to be examined by a dermatologist.  (Id. at 11.)  He "was informed that there was no dermatologist available" at the prison and was sent back to his cell.  (Id.)

A few days later, between June 11 and June 15, 2009, Nichols conducted a "MRSA check" on Stevens in his cell.  (Id. at 8, 11.)  She identified two lesions on his right leg but told him that they were not the result of a MRSA infection.  (Id. at 11.)  Stevens again requested, to no avail, that he be examined by a dermatologist or "someone specifically trained in 'skin disease detection.'"  (Id.)

On June 16, 2009, Cihiylik examined Stevens, at which time he was prescribed an antibiotic and placed in isolation as a precaution.  (Id. at 6, 10.)  A culture of his lesions was taken.  (Id. at 10.)  He was later advised that he was, indeed, suffering from MRSA.  (Id.)

---

[1] Stevens attached to the complaint (Docket No. 3) several documents related to the grievance he pursued in the prison before filing his suit.  Pursuant to Rule12(b)(6), the court may consider such exhibits along with the allegations contained in the complaint.  Pension Ben. Guar. Corp. v. White Consol. Indus., Inc., 998 F.2d 1192, 1196 (3d Cir. 1993) (to decide a motion to dismiss, courts may consider "the allegations contained in the complaint, exhibits attached to the complaint and matters of public record").  Because the pages of the complaint and the exhibits were out of order and intermixed when filed, the court will refer to them collectively as the "Complaint" and will refer to the page numbers based on the numbers printed electronically at the top of each page by the court's ECF system.

## II.     Standards Under Rule 12(b)(6)

In analyzing a motion to dismiss for failure to state a claim under Fed. R. Civ. P. 12(b)(6), the court must determine whether the facts alleged in the complaint are sufficient to show that the plaintiff has a plausible claim for relief.  Fowler v. UPMC Shadyside, 578 F.3d 203, 210-211 (3d Cir. 2009).  "This 'plausibility' determination will be 'a context-specific task that requires the reviewing court to draw on its judicial experience and common sense.'"  Id. (quoting Ashcroft v. Iqbal, __ U.S. __, __, 129 S. Ct. 1937, 1949-50 (2009)).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  Iqbal, 129 S. Ct. at 1949.  The issue is "'not whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claim.'"  Bell Atlantic v. Twombly, 550 U.S. 544, 563 n.8 (2007) (quoting Scheuer v. Rhoades, 416 U.S. 232, 236 (1974)).

In conducting this review, a court must accept all "well-pleaded" facts in the complaint as true.  Fowler, 578 F.3d at 211.  This assumption of truth does not, however, apply to legal conclusions couched as factual allegations or to "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements."  Iqbal, 129 S. Ct. at 1949.  At the same time, the pleadings of *pro se* plaintiffs must be "liberally construed."  Erickson v. Pardus, 551 U.S. 89, 93-96 (2007) (quoting Estelle v. Gamble, 429 U.S. 97, 106 (1976) ("a *pro se* complaint, however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers") (internal quotation marks omitted)).

**III.    Discussion**

Stevens claims that defendants deprived him of his right under the Eighth Amendment to be free from cruel and unusual punishment. (Complaint 3, 5-6, 9-10.) He claims that his nurses lacked proper medical training and should have consulted a dermatologist to diagnose and treat the lesion-like bumps on his leg. (Id. at 8.) He also claims that Meisel failed to "devise or ensure" the application of appropriate policies and procedures at Lehigh County Prison for protecting Stevens's Eighth Amendment rights. (Id. at 10.)

**A.    Claim Against Nurses**

Section 1983 provides for the imposition of liability on any person who, acting under color of state law, deprives another of rights, privileges, or immunities secured by the Constitution or laws of the United States. 42 U.S.C. § 1983. The statute is not a source of substantive rights, but merely provides "a method for vindicating federal rights elsewhere conferred." Graham v. Connor, 490 U.S. 386, 393-94 (1989) (quotation omitted). In order to establish a deprivation of his Eighth Amendment rights in this case, Stevens must allege: (1) an objective element (that the deprivation was "serious"); and (2) a subjective element (that a prison official acted with a sufficiently culpable state of mind, i.e., "deliberate indifference"). Nami v. Fauver, 82 F.3d 63, 67 (3d Cir. 1996) (citing Wilson v. Seiter, 501 U.S. 294, 304 (1991)).

With respect to a claim of unconstitutional deprivation of medical care, a medical need is "serious" if the condition is "'one that has been diagnosed by a physician as requiring treatment or one that is so obvious that a lay person would easily recognize the necessity for a doctor's attention.'" Monmouth County Corr. Inst. Inmates v. Lanzaro, 834 F.2d 326, 347 (3d Cir. 1987) (quoting Pace v. Fauver, 479 F.Supp. 456, 458 (D.N.J. 1979)). The test for "deliberate indifference" in this context is subjective recklessness. Farmer v. Brennan, 511 U.S. 825, 837

(1994). The test requires that the official "knows of and disregards an excessive risk to inmate health or safety; the official must be both aware of the facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." Id. "[A]n official's failure to alleviate a significant risk that he should have perceived but did not, while no cause for commendation, cannot under our cases be condemned as the infliction of punishment." Id. at 838. Where, however, knowledge of the need for medical care is accompanied by the intentional refusal to provide that care, the deliberate indifference standard is met. Lanzaro, 834 F.2d at 346 (citation omitted).

Here, even assuming that the complaint sufficiently alleges that Stevens had a serious medical condition, his claim against his nurses must nevertheless be dismissed.[2] He has not sufficiently alleged that his nurses responded to his needs with deliberate indifference. In order to meet the deliberate indifference standard, he must allege conduct by prison officials worse than mere negligence:

> To make a colorable claim of medical treatment so inadequate that it violates the Eighth Amendment's prohibition against cruel and unusual punishment, plaintiff must allege not mere "inadvertent failure to provide adequate medical care," but "deliberate indifference to serious medical needs."

Caraballo v. Med. Dep't Berks County Prison, No. 92-0472, 1992 WL 17769, at *1 (E.D. Pa. Jan. 29, 1992) (quoting Estelle, 429 U.S. at 104-105 (allegations of negligent treatment are

---

[2] It is not clear whether, prior to the time Stevens was placed in isolation, the lesion-like bumps on his leg were so obviously the result of a MRSA infection that his nurses should have recognized that he required treatment beyond that which they gave him. Although it was later found that Stevens suffered from the potentially serious condition of a MRSA infection, it may be that a "lay person" would not have "easily recognized" the lesion-like bumps on Stevens's leg as requiring a doctor's attention. Id. at 347. Thus, it is not clear whether Stevens could meet the first, objective element of an Eight Amendment claim – that he had a serious medical condition. It is not necessary, however, to determine whether Stevens has sufficiently alleged that he had a serious medical condition because Stevens has not sufficiently alleged the second, subjective element of an Eight Amendment claim – deliberate indifference.

medical malpractice claims and do not trigger constitutional protections)); see also Farmer, 511 U.S. at 834 (the required state of mind is more than negligence in diagnosing or treating a medical condition). Deliberate indifference is characterized by "obduracy and wantonness, not inadvertence or error in good faith." Whitley v. Albers, 475 U.S. 312, 319 (1986). A mere disagreement over a medical judgment cannot form the basis of an Eighth Amendment claim. White v. Napoleon, 897 F.2d 103, 110 (3d Cir. 1990).

Furthermore, prison authorities are accorded "considerable latitude" in the diagnosis and treatment of prisoners. Durmer v. O'Carroll, 991 F.2d 64, 67 (3d Cir. 1993) (because "there may, for example, be several ways to treat an illness," medical professionals have been accorded considerable latitude in the diagnosis and treatment of prisoners). Where a prisoner has received some medical attention and the dispute is over the adequacy of the treatment, federal courts are generally reluctant to second guess medical judgments and to constitutionalize claims which sound in state tort law. United States ex rel. Walker v. Fayette County, 599 F.2d 573, 575 n.2 (3d Cir. 1979). Thus, when a plaintiff receives medical care at a prison and is only challenging the quality of that care, his constitutional rights have not been violated and his complaint may be dismissed. Caraballo, 1992 WL 17769, at *1 (citing Estelle, 429 U.S. at 104-105). "While [a plaintiff] may be dissatisfied with his medical treatment, it is well established that 'an inmate's disagreement with medical treatment is insufficient to establish deliberate indifference.'" Capozzi v. Northampton County, No. 08-cv-1480, 2009 WL 2854859, at *2 (E.D. Pa. Sept. 3, 2009) (quoting Bruton v. Gillis, 2008 WL 4453367, at *11 (M.D. Pa. 2008) ("[i]n sum, negligence, unsuccessful medical treatment, or medical malpractice do not give rise to a § 1983 cause of action")).

Here, Stevens's own allegations demonstrate that he received immediate and continued medical care from the time he first requested examination of a lesion-like bump on his leg. Between June 7, 2009, when he first requested medical treatment, and June 16, 2009, he was examined at least three times by three different nurses. His nurses may not have immediately recognized any lesion-like bump on his leg as being the result of a MRSA infection, but once it became apparent to them that he may have contracted MRSA they placed him on antibiotics. Stevens does not allege that the antibiotic treatment he received was inappropriate.[3] Nor does he allege that he was ever denied medical treatment completely. Though he may have wished that his nurses had diagnosed him with MRSA earlier, or that they had consulted immediately with a dermatologist, his disagreement with the course of action that they took is not enough to state a § 1983 claim. Section 1983 "does not require that a prisoner receive every medical treatment that he requests or that is available elsewhere." Bruton, 2008 WL 4453367, at *12; see also Thomas v. Zinkel, 155 F. Supp. 2d 408, 411 (E.D. Pa. 2001) (decision of health care provider "not to perform particular tests or diagnostic measures on a prisoner will not support § 1983 claim because these decisions are considered medical judgments that are non-actionable").

Stevens's claim fares no better if the court treats it not as claiming a complete denial of medical care but rather as challenging delay in the receipt of such care. In situations where medical care is delayed, a plaintiff can establish deliberate indifference if necessary medical treatment is delayed for non-medical reasons. Lanzaro, 834 F.2d at 346. Stevens makes no allegation, however, that his nurses delayed any medical treatment for non-medical reasons.

---

[3] In fact, Stevens does not appear to believe that a dermatologist would have treated him any differently than he eventually was treated. His complaint alleges only that had his nurses consulted with a dermatologist earlier the dermatologist "could have diagnosed [Stevens's] true illness and prescribed anti-biotic . . . ." (Complaint 8.)

Although Stevens may be dissatisfied with how quickly they properly diagnosed him with MRSA, their conduct does not amount to a constitutional violation.

Put another way, Stevens's allegations amount only to a claim of malpractice. His complaint is that he disagreed with the treatment his nurses provided and that he did not feel that he was being given sufficient treatment. Such a complaint is not actionable under § 1983. "Simple malpractice under a common law negligence standard, without some more culpable state of mind, is not inconsistent with evolving notions of decency merely because it occurs within the four walls of a prison." Sample v. Diecks, 885 F.2d 1099, 1109 (3d Cir. 1989) (citing Estelle, 429 U.S. at 105-06 (in the medical context, an inadvertent failure to provide adequate medical care cannot be said to constitute an unnecessary and wanton infliction of pain or to be repugnant to the conscience of mankind)).[4]

## B. Claim Against Meisel

Finally, because I will dismiss Stevens's claim that his nurses acted with deliberate indifference to his medical needs, I will also dismiss his claim against Meisel for failure to set proper policies for the medical department's decisions. The Third Circuit has established a four-

---

[4] Even holding Stevens's complaint to the less stringent pleading standards of *pro se* plaintiffs, the allegations do not sufficiently allege deliberate indifference. Stevens does not suggest that his nurses were aware that there was an excessive risk to his health or safety but wantonly refused to provide him medical care. Spruill v. Gillis, 372 F.3d 218, 236 n.12 (3d Cir. 2004) (stating that while a *pro se* complaint should be read liberally, an inmate plaintiff must still allege that defendant was aware of the risk and intentionally disregarded it); Outterbridge v. Pa. Dep't of Corr., No. 00-1541, 2000 WL 795874, *2 (E.D. Pa. June 7, 2000) (finding that even where medical professionals were alleged to have "consciously disregarded" abnormal laboratory results, leading to inmate's death, complaint did not sufficiently allege that they knew of and disregarded the serious risk to the decedent). Allegations of negligence and failing to use professional judgment, even if true, do not rise to the level of a constitutional violation and, while not sanctioned by the court, only result in a state action for malpractice.

part test for supervisor liability based on a claim of failure to ensure the application of appropriate policies and procedures for protecting an inmate's Eighth Amendment rights:

> [T]o hold a supervisor liable because his policies or practices led to an Eighth Amendment violation, the plaintiff must identify a specific policy or practice that the supervisor failed to employ and show that: (1) the existing policy or practice created an unreasonable risk of the Eighth Amendment injury; (2) the supervisor was aware that the unreasonable risk was created; (3) the supervisor was indifferent to that risk; and (4) the injury resulted from the policy or practice.

Beers-Capitol v. Whetzel, 256 F.3d 120, 134 (3d Cir. 2001). Stevens cannot meet this test. As shown above, he failed to allege that his nurses deprived him of his Eight Amendment rights. Thus, no Eighth Amendment injury "resulted from the policy or practice." Id. Without an underlying deprivation of Stevens's Eighth Amendment rights, Meisel cannot be held liable under § 1983 for failure to set proper policies for the medical department's decisions.[5]

In sum, I conclude that Stevens's complaint fails to state any claim that would entitle him to relief under § 1983. I further conclude that, even construing the complaint liberally because it was filed *pro se*, Stevens's allegations could only result in a state action for malpractice, and any amendment would therefore be futile. Shane v. Fauver, 213 F.3d 113, 117 (3d Cir. 2000) (dismissal of a *pro se* complaint without leave to amend "is justified only on the grounds of bad faith, undue delay, prejudice, or futility"). Accordingly, I will grant defendants' motions to dismiss with prejudice.

---

[5] A supervisory official may also be held liable under § 1983 if he or she had actual knowledge of or personal involvement in, or acquiesced to the alleged constitutional violation. Capone v. Marinelli, 868 F.2d 102, 106 n.7 (3d Cir. 1989) (supervisory personnel are "liable for the § 1983 violations of their subordinates if they knew of, participated in or acquiesced in such conduct") (citation omitted). There are no allegations, however, that Meisel knew of, participated in, or acquiesced in the conduct of Stevens's nurses.

## IV. Conclusion

Stevens's allegation that he was not properly diagnosed with MRSA may be troubling, if true, but the complaint does not allege that his nurses knew of and intentionally disregarded an excessive risk to his health or safety. Stevens may have endured some hardship, but his allegations do not amount to deliberate indifference under the Eighth Amendment. He has therefore failed to state a claim against any defendant under § 1983. Accordingly, I will grant defendants' motions to dismiss and will dismiss Stevens's complaint with prejudice. An appropriate order follows.